**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| JENNIFER OHAMA | CIVIL ACTION |
|---|---|
| v. | NO. 19-2150 |
| ALAN M. MARKOWITZ | |

## MEMORANDUM RE: MOTION TO DISMISS AMENDED COMPLAINT

Baylson, J.                                                                                    January 21, 2020

### I.    Introduction

Jennifer Ohama ("Plaintiff") alleges that Alan Markowitz ("Defendant"), her former romantic partner, is liable in tort and contract for failing to comply with the terms of a settlement agreement that was drafted after the parties ended their relationship.[1]  Plaintiff asserts five counts against Defendant: (I) Breach of Contract; (II) Breach of Oral Contract; (III) Intentional Misrepresentation; (IV) Negligent Misrepresentation; and (V) Palimony.

Presently before the Court is Defendant's Motion to Dismiss the Amended Complaint.  For the reasons that follow, Defendant's Motion is **GRANTED** as to Counts III and IV, and **DENIED** as to Counts I, II, and V.

### II.    Factual Background[2]

After meeting in 2004, Plaintiff and Defendant developed a "romantic, marital-type relationship and conducted themselves accordingly, both privately and publicly."  (ECF 13, Am.

---

[1] The Court is sitting in diversity because Plaintiff has adequately alleged that the action is between citizens of different states and involves an amount in controversy in excess of $75,000.  28 U.S.C. § 1332(a)(1),

[2] The following factual narrative is drawn from the Amended Complaint and disregards any differences between the Amended Complaint and the Original Complaint.  See W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 173 (3d Cir. 2013) (noting that because "the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint").  The Court takes the allegations in the Amended Complaint as true and draws all reasonable inferences in favor of Plaintiff, as is required at the motion to dismiss stage.  Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

Compl. ¶ 45.)  Plaintiff and Defendant, along with their respective children, eventually moved in together at 210 Glenn Road in Ardmore, Pennsylvania (the "Glenn Road property").  (Id. ¶¶ 5, 8.) Plaintiff alleges that from the beginning of their cohabitation, Defendant "assured Plaintiff that he would provide security and care for Plaintiff and [Plaintiff's] daughter financially for the rest of their respective lives."  (Id. ¶ 9.)  As examples of Defendant's professed commitment, Plaintiff discusses Defendant's assurance that he would "always take care of Plaintiff and that she would never have to worry about anything, (id. ¶ 33(a)); Defendant's marriage proposal, (id. ¶ 33(b)); and Defendant's fulfillment of his promise to maintain a $2.5 million life insurance policy naming Plaintiff as beneficiary, (id. ¶ 33(c).)  In exchange for the support Defendant pledged to provide, Plaintiff "devoted herself to making a home, providing companionship, and otherwise fulfilling Defendant's emotional, physical, and social needs."  (Id. ¶ 47.)  Plaintiff alleges that she "handled the custody schedules with [Defendant's] then estranged children; … ran Defendant's household and took care of Defendant's children on a daily basis; … assimilate[d] into [Defendant's] way of life; … [and] provide[d] [Defendant] with constant companionship."  (Id. ¶ 7.)

Approximately ten years after Defendant and Plaintiff moved in together, their relationship deteriorated, leading Plaintiff and her daughter to move out of the Glenn Road property.  (Id. ¶ 11.)  Plaintiff and her daughter relocated to California and maintain an apartment there.  (Id. ¶ 37.) Following the dissolution of the romantic union between Plaintiff and Defendant, Defendant engaged counsel to prepare an agreement that would "provide certain financial benefits to Plaintiff, in exchange for Plaintiff's agreement to … relinquish all claims against Defendant or his estate." (Id. ¶ 12.)  The agreement, which went through several rounds of revision between the parties, was finalized on July 21, 2017 and transmitted to Plaintiff for signature (the "Settlement Agreement,"

attached as Exhibit A to Plaintiff's Amended Complaint[3]).  (Id. ¶ 13.)  Plaintiff sent the executed

copy of the Settlement Agreement to Defendant's counsel on August 17, 2017.  (Id. ¶ 14.)  The

Settlement Agreement does not contain Defendant's signature, and Plaintiff does not allege that

Defendant signed.

The Settlement Agreement includes the following terms:

- Plaintiff's release of "any and all rights and obligations which she may have or at any time hereafter have for past, present or future support or maintenance, property distribution, counsel fees, costs, expenses, and any other right or obligation, economic or otherwise, arising out of her relationship with [Defendant]." (Settlement Agreement ¶ A(4)(a).)

- Plaintiff's agreement to "vacate the [Glenn Road property]" by September 1, 2017, subject to her right to "remove all of her personal possessions."  (Id. ¶ B(1)(a)(i).)

- Defendant's agreement to "pay the monthly lease cost for [Plaintiff's] BMW" through the end of 2017.  (Id. ¶ B(2).)

- Defendant's agreement to "contribute up to 50% of [Plaintiff's daughter's] remaining college tuition and room and board expenses at college," conditioned on Plaintiff's daughter's father contributing at least 50% of the costs.  (Id. ¶ B(5).)

- Defendant's agreement to make the following payments to Plaintiff: $700 per month for health insurance for one year, (id. ¶ B(6)(i)); $3,000 per month for rental or mortgage expenses, (id. ¶ B(6)(ii)); $5,000 per month to support Plaintiff's other living expenses, (id. ¶ B(6)(iii)); and a lump sum payment of $300,000, (id. ¶ B(7).) Defendant also agreed to maintain a $1 million life insurance policy naming Plaintiff as beneficiary until Plaintiff's death, cohabitation, or remarriage.  (Id. ¶ B(8).)

- Plaintiff's agreement to confidentiality and nondisparagement clauses.  (Id. ¶ C.)

- Plaintiff's agreement to resolve by arbitration "any dispute or any claim of a breach of this Agreement by [Plaintiff]."  (Id. ¶ D.)

---

[3] The Court may consider the Settlement Agreement since Plaintiff attached it to her Amended Complaint.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.") (emphasis added).

Around the time of the circulation of the finalized agreement, Plaintiff alleges that both parties took actions in contemplation of the settlement. On June 29, 2017, Defendant transferred $300,000 to Plaintiff's bank account. (Id. ¶ 15.) Additionally, Defendant continued to maintain the $2.5 million life insurance policy with Plaintiff named as beneficiary, paid for Plaintiff's monthly health insurance (until January 2018), and paid for a storage unit for Plaintiff's personal items (until May 2019). (Id. ¶¶ 15, 18.) On July 22, 2017, the day after the Settlement Agreement was transmitted to Plaintiff for signature, Plaintiff vacated the Glenn Road Property. (Id. ¶ 16.)

## III. Procedural History

Plaintiff filed her first complaint in this Court against Defendant on May 17, 2019 seeking continued financial support, attorney's fees, and costs. (ECF 1.) Defendant moved to dismiss for failure to state a claim on July 11, 2019. (ECF 12.) Defendant's motion was mooted by Plaintiff's filing of an Amended Complaint on August 1, 2019. (ECF 13.) Thereafter, Defendant filed a motion to dismiss Plaintiff's Amended Complaint on August 15, 2019. (ECF 15.) Plaintiff responded in opposition to Defendant's Motion on August 27, 2019. (ECF 17.) On September 3, 2019, Defendant replied in support of the Motion to Dismiss. (ECF 18.)

## IV. Legal Standard

The pleading standard set forth in Federal Rule of Civil Procedure ("Rule") 12(b)(6) governs the breach of contract; breach of oral contract; negligent misrepresentation; and palimony claims. Plaintiff's intentional misrepresentation claim, which relies on fraud, is governed by Rule 9(b).

### A. Pleading Standard Under Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff."

Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). The Supreme Court has instructed that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B. Pleading Standard Under Rule 9(b)

All allegations of fraud must meet Rule 9(b)'s heightened pleading standard—the "particularity" requirement. Rule 9(b)'s pleading standard not only gives the defendant notice of the claims against them, but also provides an increased measure for protection for their reputation and reduces the number of frivolous lawsuits brought solely to extract settlements. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).

Rule 9(b) may be satisfied by describing "the circumstances of the alleged fraud with precise allegations of date, time, or place, or by using some means of injecting precision and some measure of substantiation into [the] allegations of fraud." Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002) (internal quotation marks and citation omitted). Stated differently, the plaintiff must plead the "who, what, when, where,

and how" of the fraud. <u>Institutional Inv'rs Grp. v. Avaya, Inc.</u>, 564 F.3d 242, 253 (3d Cir. 2009); <u>see</u> <u>Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.</u>, No. 01-5508, 2003 WL 329145, at *6 (E.D. Pa. Feb. 12, 2003) (Baylson, J.) ("While a complaint need not set out 'precise words,' it should adequately describe the nature and subject of an alleged misrepresentation.").

However, "courts should be sensitive to the fact that application of [Rule 9(b)] prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud. Accordingly, the normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." <u>In re Burlington</u>, 114 F.3d at 1418 (internal quotation marks and citations omitted). Boilerplate and conclusory allegations will not satisfy the Rule 9(b) standard. <u>In re Burlington</u>, 114 F.3d at 1418.

## V. Discussion

In her Amended Complaint, Plaintiff alleges five counts against Defendant: (I) Breach of Contract; (II) Breach of Oral Contract; (III) Intentional Misrepresentation; (IV) Negligent Misrepresentation; and (V) Palimony. The Court concludes that Plaintiff's Amended Complaint alleges facts sufficient to allow Counts I, II, and V to survive Defendant's Motion, but that Counts III and IV must be dismissed.

Because the Court is sitting in diversity, the Court applies the law of the state of Pennsylvania to each of Plaintiff's state law claims. <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); <u>Liggon-Redding v. Estate of Sugarman</u>, 659 F.3d 258, 262 (3d Cir. 2011) ("A federal court sitting in diversity must apply state substantive law."). In the absence of authoritative guidance from the Supreme Court of Pennsylvania, the Court looks to "decisions of [Pennsylvania] intermediate appellate courts, of federal courts

interpreting [Pennsylvania's] law, and of other state supreme courts that have addressed the issue."

Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

### A. Defendant's Motion to Dismiss is Denied as to Count I (Breach of Contract) and Count II (Breach of Oral Contract)

In Count I and Count II, Plaintiff asserts two theories of contract liability: [Count I] breach of contract arising out of Defendant's failure to abide by the Settlement Agreement; and [Count II] breach of oral contract arising out of the oral promises Defendant made to Plaintiff.

In Count I, Plaintiff alleges that Defendant breached the Settlement Agreement by failing to: make monthly lease payments on the BMW leased by Plaintiff through the end of 2017; contribute to Plaintiff's daughter's college expenses; make monthly payments in the amount of $8,700 to Plaintiff; make monthly payments for Plaintiff's health insurance, the life insurance policy with Plaintiff named as beneficiary, and the life insurance policy with Plaintiff's daughter named as beneficiary; and contribute to Plaintiff's monthly living expenses. (Am. Compl. ¶¶ 23(a)–(e).) In Count II, Plaintiff alternatively alleges that the negotiations resulting in the Settlement Agreement resulted in an oral contract that Defendant breached.

Because of the overlap in the factual and legal analysis on Counts I and II, the substance of the contract theories of liability will be evaluated together. Compare Am. Compl. ¶¶ 20–25 (discussing breach of contract allegations), with id. ¶¶ 26–31 (discussing breach of oral contract allegations). For the reasons that follow, the Court concludes that Plaintiff has sufficiently alleged facts to support her breach of contract and breach of oral contract claims at the dismissal stage, so Defendant's Motion will be denied as to Count I and Count II. Subsection V.A.1 sets forth the elements of an enforceable contract and subsection V.A.2. explains why Plaintiff's Amended Complaint adequately alleges contract liability.

### 1. Elements of Enforceable Contract

In Pennsylvania, "[t]he validity and enforceability of settlement agreements is governed by state contract law." Shell's Disposal & Recycling, Inc. v. City of Lancaster, 504 F. App'x 194, 200 (3d Cir. 2012) (nonprecedential). To be enforceable, a contract must be between parties who have manifested an intention to be bound by the terms of the agreement; have terms that are sufficiently definite to be specifically enforced;[4] and be supported by consideration on both sides of the contract—that is, bargained-for exchange and either a benefit upon the promisor or a detriment to the promisee.[5] Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman, 795 F.2d 291, 298-99 (3d Cir. 1986).

### 2. Elements of Enforceable Contract in Dispute

Defendant contests the sufficiency of Plaintiff's allegations related to the intention to be bound element and the mutuality of consideration element.

As to the **intention to be bound** element, Defendant asserts that Count I must be dismissed because the Settlement Agreement required the signatures of both parties for the contract to become effective, but Plaintiff fails to allege that Defendant never signed the agreement. (Motion to Dismiss at 6.) Plaintiff responds that the failure to execute an agreement is not a bar to enforceability, particularly where the nonsigning party acts in a way that suggests he intended to be bound. (Plaintiff's Opposition at 4.)

---

[4] Defendant does not challenge Count I or Count II on this element. To the extent Defendant made such an argument, it would be unavailing because the Settlement Agreement details, unambiguously, the relative rights of Plaintiff and Defendant, including Defendant's obligation to make one lump sum and various monthly payments to Plaintiff, in exchange for Plaintiff's promise to vacate the Glenn Road property, release all claims against Defendant, and maintain confidentiality. (Settlement Agreement ¶¶ A(4); B(1)–(8); (C).) Given that the Settlement Agreement comprehensively, unequivocally describes the respective obligations of both Plaintiff and Defendant, the agreement is sufficiently definite to be enforced. Lombardo v. Gasparini Excavating Co., 385 Pa. 388, 393 (1956).

[5] The same three elements—intent to be bound; sufficiently definite terms; and mutual consideration—also apply to oral contracts. See Ecore Int'l, Inc. v. Downey, 343 F. Supp. 3d 459, 487 (E.D. Pa. 2018) (Surrick, J.) (describing, as the elements of an enforceable oral contract, the three general contract requirements).

As to the **mutual consideration** element, Defendant argues that Count II must be dismissed because the purported oral contract was not supported by valid consideration.[6] (Motion to Dismiss at 7-8.) Plaintiff responds that there was consideration on both sides of the agreement because, in exchange for the compensation she was to receive, she agreed to vacate the Glenn Road property, release all claims she may have had against Defendant's estate, and maintain confidentiality. (Plaintiff's Opposition at 8.)

### i. Intention to be Bound

For a settlement agreement to be enforceable, the parties must demonstrate an intention to be bound by the agreement. The assessment of whether a party manifested an intention to be bound is an objective one. The party's behavior is analyzed to determine whether "a reasonable person would apprehend that he intends to be bound by the terms of the agreement." Shell's Disposal, 504 F. App'x at 201. A signed writing is some evidence of intent, but it is not required, nor is it dispositive. Compare Channel Home Centers, 795 F.2d at 298 ("It is hornbook law that evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract"), with Goldman v. McShain, 247 A.2d 455, 459 (Pa. 1968) (recognizing that "parties may bind themselves contractually although they intend, at some later date, to draft a more formal document" if there is evidence of mutual manifestations of assent). Additionally, preliminary acts—such as entering into negotiations, drafting documents, and agreeing to execute a contract in the future—do not create an enforceable obligation without

---

[6] The Court rejects Defendant's argument that the breach of oral contract claim should be dismissed as "lack[ing] internal consistency." (Motion to Dismiss at 7.) It is well-settled that under the Federal Rules of Civil Procedure, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," Fed. R. Civ. P. 8(d)(1), and that "[a] party may state as many separate claims … as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3). See also TriState HVAC Equip., LLP v. Big Belly Solar, Inc., 836 F. Supp. 2d 274, 289 (E.D. Pa. 2011) ("Rule 8(d) allows a plaintiff to plead alternative theories of relief, even if those theories are inconsistent.").

evidence that the parties have agreed to the "essential terms" of the contract. Mazzella v. Koken, 739 A.2d 531, 534 (Pa. 1999).

Under Pennsylvania law, an agreement can be effective even in the absence of a signature. See, e.g., Commerce Bank/Pennsylvania v. First Union Nat'l Bank, 911 A.2d 133, 147 (Pa. Super. Ct. 2006) (affirming enforcement of a settlement agreement where "the parties c[a]me to a meeting of the minds on all essential terms" even though the formal writing they anticipated never occurred). However, the Supreme Court of Pennsylvania has made clear that if a contract expressly conditions effectiveness on signatures, then the agreement will not become enforceable until both parties have signed.

The leading case from the Supreme Court of Pennsylvania on this issue is Franklin Interiors v. Wall of Fame Management Co., Inc., 511 A.2d 761 (Pa. 1986). The issue in Franklin Interiors was whether an agreement that, by its terms, did "not become a contract until approved by an officer of [the plaintiff]" was enforceable where the plaintiff had not signed or approved the document. Id. at 599. After summarizing basic canons of construction and analyzing the language of the contract, the court concluded that the contractual language requiring approval of both parties was "a condition precedent to [enforcement]," and therefore refused to give effect to the agreement. Id. at 601; see also InfoComp, Inc. v. Electra Prods., Inc., 109 F.3d 902, 906 (3d Cir. 1997) (finding a proposed agreement unenforceable because the agreement stated it would not be deemed "accepted" until it was signed by an authorized employee, and no such authorization occurred).

Two cases interpreting the Franklin Interiors mandate—one from the Supreme Court of Pennsylvania, the other from the Commonwealth Court of Pennsylvania—demarcate the bounds of this analysis. Compare Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d

133, 138 (Pa. 1999) (finding that "the parties intended to be bound under the terms of the contract regardless of the execution of all signatories"), with Commonwealth v. On-Point Tech. Sys, Inc., 821 A.2d 641, 648 (Pa. Commw. Ct. 2003) (distinguishing Shovel Transfer based on "limiting language" that required signatures for the contract to become effective).

In Shovel Transfer, the Supreme Court of Pennsylvania considered whether the absence of signatures precluded the formation of a valid and enforceable contract where the signature of the parties was not required by the terms of the contract or by law. 739 A.2d at 134. Because the agreement in Shovel was devoid of language requiring signatures, the court concluded that there was no evidence the parties expressly intended for signatures to be prerequisite to the effectiveness of the agreement; therefore, the lack of signatures did not render the agreement unenforceable. Id. at 137-39. Based on the dearth of language requiring signatures, the court held that the parties intended to be bound (regardless of whether all signatories properly executed the agreement), and concluded that an enforceable contract was formed notwithstanding the absence of signatures. Id. at 139.

By contrast, in On-Point Technology, the Commonwealth Court of Pennsylvania refused to give effect to an unsigned agreement because doing so would have contravened the terms of the proposed writing, which explicitly required signatures of all parties. 821 A.2d at 648. The relevant mandatory language provided that "[t]his Contract will not be fully executed and binding on the Parties unless and until all signatures are affixed hereto." Id. This provision distinguished the case from Shovel, where there was no explicit requirement of written signature. Id. Based principally on the mandatory signature language and the absence of signatures, the On-Point Technology court concluded that no contract had been formed. Id. at 648-49.

Federal district courts construing <u>Shovel</u> and <u>On-Point Technology</u> have applied these precedents differently. <u>Compare</u> <u>Buzzmarketing, LLC v. Upper Deck Co. LLC</u>, No. 03-4392, 2004 WL 966241, at *3 (E.D. Pa. May 6, 2004) (Schiller, J.) (construing <u>On-Point Technology</u> broadly to find that contractual language stating the agreement "may be executed in counterparts and facsimile signatures shall suffice" demonstrated an intention to be bound <u>only</u> by a signed writing), <u>with</u> <u>Kearney v. JPC Equestrian, Inc.</u>, No. 3:11-1419, 2014 WL 6473206, at *9 (M.D. Pa. Nov. 18, 2014) (disagreeing with the <u>Buzzmarketing</u> court's analysis and concluding that customary language involving counterparts and facsimile signatures did not "cause[] all agreements bearing this language to become unenforceable in the absence of signatures"). However, where there are facts that establish an intention to be bound, enforcement should be permitted—even if the party who the contract is enforced against failed to sign the agreement. <u>See, e.g.</u>, <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 584 (3d Cir. 2009) (describing "overwhelming" evidence that sufficed to support the plaintiff's breach of contract claim, including evidence that the defendant recommended the agreement be set out in writing and offered to sign it, even though there was no signed, executed agreement between the parties).

Plaintiff has sufficiently alleged facts indicating that both she and Defendant intended to be bound by the terms of the Settlement Agreement, notwithstanding Defendant's apparent failure to sign. First, the relevant contract language in the Settlement Agreement gestures toward a signature requirement but does not make clear that the presence of signatures is <u>mandatory</u>. The reference to signatures is found in two parts of the Settlement Agreement: Paragraph A(1)(a) defines the "execution date" as "the date on which the last party signs [the agreement]" and Paragraph A(1)(c) provides that the "effective date" is "the execution date." This formulation could be read to suggest that the contract is not executed, and thus not enforceable, until the

signatures of both Plaintiff and Defendant are present. However, these definitions are distinguishable from the unambiguous, mandatory language in On-Point Technology that precluded effectiveness "unless and until all signatures are affixed." 821 A.2d at 648. Because of the contrast between the limiting language in On-Point Technology (which expressly precluded effectiveness until signatures were obtained) and the definitions section in the Settlement Agreement (which simply provides that the agreement becomes effective upon attainment of signatures), On-Point Technology is not on all fours. Id. at 648.

Second, the surrounding facts support the plausibility of the inference that Defendant intended to be bound. The Settlement Agreement was the product of a month of discussions and negotiations between Plaintiff, Defendant, and the liaison retained by Defendant to handle the settlement. (Am. Compl. ¶ 13.) Both Plaintiff and Defendant were involved in reviewing and revising the terms of the settlement, culminating in the Settlement Agreement that was signed and executed by Plaintiff. (Id.) Plaintiff was instructed to sign the agreement and transmit the signed copy to Defendant, as Plaintiff was under the impression that Defendant would also execute the Settlement Agreement. (Id. ¶¶ 13–14.) Finally, Defendant's alleged compliance with the terms of the Settlement Agreement belies his assertion that he did not agree to be bound. See DiDonato v. United States Legal Support, Inc., No. 15-6035, 2017 3534571, at *5 (E.D. Pa. Aug. 17, 2017) (Padova, J.) (finding that defendant who did not object to a settlement agreement containing a forged copy of his signature and deposited a check that was sent in accordance with the terms of the settlement "objectively manifested conduct [that] expressed acceptance of the [s]ettlement [a]greement").

Taking Plaintiff's factual allegations as true, as the Court must do at the motion to dismiss stage, Defendant transferred $300,000 to Plaintiff's bank account, partially paid for her monthly

health insurance, and partially paid for her storage costs, all in accordance with the terms of the Settlement Agreement. (Am. Compl. ¶¶ 15, 18.) These actions demonstrate Defendant's acceptance of and consent to the terms of the Settlement Agreement. Even though Defendant ultimately failed to sign the Settlement Agreement, the actions Plaintiff alleges he took in fulfilment of his obligations under the agreement indicate that Defendant intended to enter into a binding agreement.

The deference to the unambiguous intent of the parties emphasized by the <u>On-Point Technology</u> court does not disturb the well-settled principle that a contract need not be signed "as long as both parties accept and act under its terms," and Plaintiff's narrative of facts makes plausible that Defendant's actions manifested an intent to be bound. <u>Sullivan v. Allegheny Ford Truck Sales, Inc.</u>, 423 A.2d 1292, 1295 (Pa. Super. Ct. 1980); <u>see also</u> <u>Accu-Weather, Inc. v. Thomas Broad. Co.</u>, 625 A.2d 75, 79 (Pa. Commw. Ct. 1993) (concluding that because "acceptance of a contract may be manifested by one's 'course of dealings' with the other party," the defendant's failure to formalize the contract did not negate the parties' agreement).

Therefore, Plaintiff has sufficiently alleged that Defendant manifested an intention to be bound by the Settlement Agreement that is not defeated by his failure to sign. Thus, the Court rejects Defendant's theory for why Count I should be dismissed.

### ii. Mutual Consideration

To be enforceable, a contract must be supported by consideration on both sides. The test for consideration is "whether the promisee, at the instance of the promisor, has suffered any detriment, or whether, in return for the promise, he has done something that he was not bound to do, or has promised to do some act, or has abstained from doing something." <u>Mikos v. Kida</u>, 172 A. 101, 102 (Pa. 1934). As long as "the promisee has suffered [a] detriment, however slight, or

… has done what he was not otherwise bound to do [even though he has suffered no real detriment]," the contract is supported by valid consideration. In re Commonwealth Tr. Co. of Pittsburgh, 54 A.2d 649, 652 (Pa. 1947). A "detriment" under contract law is anything that requires "giving up something which immediately prior … the promisee was privileged not to do or refrain from doing." Goodbody v. Margiotti, 187 A. 425, 430 (Pa. 1936).

Defendant asserts that there is no consideration supporting Plaintiff's side of the bargain because (1) Plaintiff did not have "a legally cognizable claim [to] to the Glenn Road property," so her promise to vacate is simply a surrender of a nonexistent legal right; (2) Plaintiff did not have a legal right to use Defendant's credit cards in the first instance, so her promise to refrain from using these cards is not a legal detriment; and (3) Plaintiff's promise to relinquish all claims against Defendant's estate is legally insufficient. (Motion to Dismiss at 9-10.)

The Court finds that there was an exchange of consideration on both sides of the Settlement Agreement. In exchange for Defendant's promises to pay, Plaintiff agreed to release all of her claims against Defendant for support, leave the Glenn Road property, terminate her use of Defendant's credit cards, and abide by confidentiality and nondisparagement clauses. Defendant's position that these actions do not establish valid consideration is rejected. First, although "[t]he mere promise not to institute legal proceedings, when there is no bona fide foundation for the same," is not valid consideration, here there is a valid disagreement about Plaintiff's entitlement to maintenance and property distribution, as discussed in subsection V.C, that establishes a legal detriment. Bryant v. Bryant, 144 A. 904, 908 (Pa. 1929). Second, Plaintiff's departure from the Glenn Road property and agreement to cease use of Defendant's credit cards establish consideration because these actions are a legal detriment; that is, Plaintiff took action that she was not otherwise required to take. See Goodbody, 187 A. at 430 (noting that a legal detriment exists

if "at the request of the promisor and upon the strength of the promise, [the promisee] performed any act which occasioned him the slightest trouble or inconvenience, and which he was not obliged to perform"). Finally, Plaintiff's agreement to abide by the confidentiality and nondisparagement clauses implicates a legal detriment that establishes consideration. Cf. <u>Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.</u>, 307 F.3d 197, 220 (3d Cir. 2002) (finding a confidentiality clause unenforceable because of "lack of adequate consideration").

In sum, Plaintiff has sufficiently alleged that the Settlement Agreement was supported by mutual consideration. Therefore, the Court rejects Defendant's theory as to why Count II should be dismissed.[7]

### B. Defendant's Motion to Dismiss is Granted as to Count III (Intentional Misrepresentation) and Count IV (Negligent Misrepresentation)

In Count III and Count IV, Plaintiff asserts two theories of tort liability: [Count III] intentional misrepresentation; and [Count IV] negligent misrepresentation. Plaintiff's misrepresentation theories rely on allegations that Defendant repeatedly assured Plaintiff he would provide financial support to Plaintiff and her daughter. Plaintiff's allegations of misrepresentative promises of financial security span the time before the parties separated, (Am. Compl. ¶ 33(a)–(d)), and after the separation, (<u>id.</u> ¶ 34(a)–(e).)

To state a claim for either intentional misrepresentation or negligent misrepresentation, Plaintiff must allege, among other elements, that a material misrepresentation induced justifiable reliance resulting in a detriment. <u>See</u> <u>Bortz v. Noon</u>, 729 A.2d 555, 560-61 (Pa. 1999) (identifying

---

[7] Defendant requests that if the "Court finds Plaintiff has stated a claim for breach of contract with respect to Count I or Count II, it … enter an Order compelling arbitration, as [arbitration] is [the] sole vehicle for resolving Plaintiff's claims" under the Settlement Agreement. (Motion to Dismiss at 5.) Plaintiff responds that only Count I is subject to arbitration, because the arbitration clause is triggered in the event "of a breach of this Agreement by [Plaintiff]." (Plaintiff's Opposition at 14 (quoting Settlement Agreement ¶ D).) Because the arbitration provision of the Settlement Agreement is vague and does not unambiguously delegate the threshold issue of arbitrability to the arbitrator, the Court declines to compel arbitration without further explanation of why this question is committed to arbitration.

elements of a claim for intentional misrepresentation and a claim for negligent misrepresentation);

see also Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994) ("[N]egligent misrepresentation differs from intentional misrepresentation in that to commit the former, the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words."). Because the claims and arguments related to intentional misrepresentation and negligent misrepresentation are similar,[8] the Court will analyze Count III and Count IV together. The analysis will be separated into (i) Defendant's pre-separation representations, which the Court concludes are insufficiently pleaded, and (ii) Defendant's post-separation representations, which the Court finds are barred by the gist of the action doctrine.

### iii. Pre-Separation Representations

Plaintiff's allegations related to Defendant's misrepresentative conduct prior to the separation are too vague and conclusory to survive dismissal. Although Plaintiff describes in sufficient detail the misrepresentations, she fails to adequately allege that Defendant made these statements with falsity. For example, Plaintiff acknowledges that after Defendant's November 2014 promises to provide for Plaintiff, he formalized their relationship by giving "Plaintiff an engagement ring." (Am. Compl. ¶ 33(b).) Similarly, elsewhere in her Complaint Plaintiff notes that Defendant "continued to maintain" the life insurance policy he had promised to secure for Plaintiff, indicating that he fulfilled his July 2016 promise to purchase a policy. (Id. ¶¶ 15, 33(c).) Indeed, accepting Plaintiff's theory as to the pre-separation representations would mean that, far

---

[8] The one area where the briefing on the intentional and misrepresentation theories diverge is Defendant's argument that Plaintiff's negligent misrepresentation claim must fail because "only representations made in the course of a party's business or trade with another are actionable in negligent misrepresentation." (Motion to Dismiss at 12.) The Court rejects this argument as inconsistent with the jurisprudence of the Supreme Court of Pennsylvania. See, e.g., Gibbs, 647 A.2d at 889 (extending the "long recognized" tort of negligent misrepresentation to the adoption context); see also Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 287 (Pa. 2005) (noting that "the common law tort of negligent misrepresentation" is not supplanted by the adoption of a specific rule that applies where the alleged false misrepresentation is made by one in the business of supplying information).

before the relationship ended, Defendant contemplated and made promises in anticipation of the parties' eventual separation. The facts alleged do not support this version of events, so there is no basis on which to conclude that Defendant's pre-separation promises were made falsely. See Greenberg v. Tomlin, 816 F. Supp. 1039, 1054 (E.D Pa. 1993) (Joyner, J.) (noting that "a promise to do something in the future and the failure to keep that promise, is not fraud"); Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs., 951 F.2d 1399, 1410 (3d Cir. 1991) ("Non-performance does not by itself prove a lack of present intent.").

In sum, the allegations in Plaintiff's Complaint indicate that, at least until the separation, Defendant followed through on his promises to ensure Plaintiff's financial security. As a result, Plaintiff has not pleaded there was an actual, false misrepresentation—let alone an actual, false misrepresentation that was material. Moreover, Plaintiff does not sufficiently allege that she relied on Defendant's statements to her detriment. Plaintiff argues that paragraphs 36–39 of the Amended Complaint establish falsity and reliance, but the allegations in these paragraphs are conclusory.

Therefore, because Plaintiff has failed to plead allegations of falsity and reliance to support her misrepresentation theories as to Defendant's pre-separation conduct, Count III and Count IV will be dismissed to the extent they rely on the factual allegations in paragraph 33 of the Amended Complaint.[9]

---

[9] The Court notes that even if the pre-separation representations had been adequately pleaded, they may nonetheless be subject to dismissal, because "[w]here … precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract, courts have repeatedly dismissed such claims as sounding in contract, and, thus, barred by the gist of the action doctrine [discussed in subsection V.B.ii]." Integrated Waste Sols., Inc. v. Goverdhanam, No. 10-2155, 2010 WL 4910176, at *11 (E.D. Pa. Nov. 30, 2010) (Buckwalter, J.).

### iv. Post-Separation Representations

Plaintiff's allegations related to Defendant's misrepresentative conduct after the separation are sufficiently pleaded but are barred by the gist of the action doctrine.

Plaintiff alleges that Defendant made various promises to ensure Plaintiff's financial security during conversations that occurred over the course of May, June, and July of 2017. (Am. Compl. ¶ 34(a)–(e).) For example, Plaintiff alleges that at a May 5, 2017 meeting at a restaurant in Wynnewood, Pennsylvania, Defendant "assured Plaintiff that [he] would financially assist and make sure that Plaintiff could obtain a mortgage and proper living accommodations." (Id. ¶ 34(a).) Plaintiff alleges that these statements were made falsely with the intent to induce her into signing the Settlement Agreement, and that in reliance on Defendant's representations, she vacated the Glenn Road property and moved with her daughter to California. (Id. ¶¶ 35–38.) Plaintiff has fulfilled the requirements of Rule 9(b), because she has identified:

- **Who:** Defendant;
- **What:** Falsely promised to provide financial support to Plaintiff to induce her consent to the terms of the Settlement Agreement;
- **When:** During meetings and conversations that occurred from May until July of 2017;
- **Where:** At various locations in Pennsylvania, including Sang Kee restaurant in Wynnewood, Pennsylvania, (id. ¶ 34(a)); the Glenn Road property, (id. ¶ 34(b)); and the Le Pain Quotidien restaurant in Wayne, Pennsylvania, (id. ¶ 34(d)–(e)); and
- **How:** By promising to follow through on his plan to ensure Plaintiff's financial security.

However, the misrepresentation claims related to Defendant's post-separation statements are barred by the gist of the action doctrine, so they cannot survive Defendant's Rule 12(b)(6) challenge. The gist of the action doctrine prohibits a plaintiff from bringing a tort claim that simply reproduces a claim for breach of contract. MRL Dev. I, LLC v. Whitecap Inv. Corp., 823 F.3d 195, 207 (3d Cir. May 17, 2016). As the Pennsylvania Supreme Court recently clarified, "[i]f the

facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract." <u>Bruno v. Erie Ins. Co.</u>, 106 A.3d 48, 68 (Pa. 2014). By contrast, "[i]f … the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." <u>Id.</u> <u>Bruno</u> instructed that the "critical determinative factor" in assessing whether the gist of the action doctrine applies is "the nature of the duty alleged to have been breached." <u>Id.</u> However, the <u>Bruno</u> court did not explain how to separate claims that implicate "broader social dut[ies]" (and do not trigger the gist of the action doctrine) from contract duties (that do trigger gist of the action).[10] <u>Id.</u>

In the wake of <u>Bruno</u>'s confirmation that Pennsylvania adheres to the gist of the action doctrine, courts are split on whether the doctrine subsumes a claim that a defendant intentionally misrepresented its intent to perform under the contract; that is, a claim of fraudulent inducement. <u>See</u> <u>Downs v. Andrews</u>, 639 F. App'x 816, 820 (3d Cir. 2016) (nonprecedential) (noting that after <u>Bruno</u>, "Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims," but declining to resolve the issue); <u>see also</u> <u>N. Am. Comms., Inc. v. Herman</u>, No. 3:17-157, 2018 WL 2186422, at *3 (W.D. Pa. May 11, 2018) (collecting cases illuminating the divergence); <u>Malone v. Weiss</u>, No. 17-1694, 2018 WL 827433, at *4 (E.D. Pa. Feb. 12, 2018) (Beetlestone, J.) (noting that <u>Bruno</u>'s failure to

---

[10] As an example of the type of duty that is "imposed by law as a matter of social policy" the <u>Bruno</u> court cited an insurer's duty not to act in bad faith. <u>Id.</u>

"explain how to determine whether a claim concerns 'a broader social duty' or a duty imposed by contract" is "particularly problematic in the context of a claim for fraudulent inducement").

Although there is not consensus, the majority view rejects fraudulent inducement claims as inconsistent with the gist of the action doctrine. <u>Compare</u> <u>Wen v. Wills</u>, 117 F. Supp. 3d 673, 682 n.2 (E.D. Pa. 2015) (Beetlestone, J.) ("The decision in <u>Bruno</u>, though it speaks in broad terms of looking to 'the nature of the duty alleged to have been breached,' does not alter [the rule] that fraud in the inducement claims arising from the misrepresentation of an intention to perform under a contract are barred under the gist of the action doctrine."), <u>Malone</u>, 2018 WL 827433, at *5 ("Permitting a fraudulent inducement claim in this case would essentially negate … the gist of the action doctrine."), <u>Glob. Sourcing LLC v. DBDK Int'l, LLC</u>, No. 17-325, 2018 WL 723098, at *2 (E.D. Pa. Feb. 5, 2018) (Beetlestone, J.) (concluding that "representations concerning the [d]efendants' intent to perform, including their intent to pay in the future, are subsumed by a claim for breach of contract [because] any claim premised on that contention is barred by the gist of the action doctrine."), <u>and</u> <u>Precision Indus. Equip. v. IPC Eagle</u>, No. 14-3222, 2016 WL 192601, at *6 (E.D Pa. Jan. 14, 2016) (O'Neill, J.) (rejecting fraud claim because "the promise that defendant made to induce plaintiff to enter into a contract is the same promise that plaintiff claims defendant broke as term of that contract"), <u>with</u> <u>Techinomics, Inc. v. Forest Power & Energy Holding, Inc.</u>, No. 2:16-1859, 2017 WL 2536969, at *3 (W.D. Pa. May 11, 2017) ("[T]he gist of the action doctrine should not be viewed as a bar to … [claims] for fraudulent inducement and negligent misrepresentation."), <u>and</u> <u>KMB Shamrock, Inc. v. LNR Transp., Inc.</u>, No. 09 CV 9046, 2015 WL 13779752, at *7 (Pa. Commw. Ct. Sept. 25, 2015) ("[F]raudulent inducement claims should remain unaffected by the gist of the action doctrine following … <u>Bruno</u>.")

The Court finds that permitting Plaintiff to maintain her misrepresentation claims with respect to the post-separation statements would violate the gist of the action doctrine. The obligations that Plaintiff now complains Defendant has not fulfilled arise <u>directly</u> from the Settlement Agreement—Defendant had no independent duty to ensure Plaintiff's financial security or provide her with health insurance. <u>See</u> <u>Malone</u>, 2018 WL 827433, at *5 (dismissing fraudulent inducement claim because "[t]he only duty that defendants allegedly breached involved a breach of a duty enshrined in [the parties' contract]"). Because Plaintiff complains of a misrepresentation that involves "a specific promise to do something that [Defendant] would not ordinarily have been obligated to do but for the existence of the contract," the gist of the action doctrine requires dismissal of Plaintiff's misrepresentation claims. <u>Bruno</u>, 106 A.3d at 68. This outcome is consistent with the Third Circuit's instruction that, where there are "two competing yet sensible interpretations of Pennsylvania law … the interpretation that restricts liability, rather than expands it" should be followed, at least "until the Supreme Court of Pennsylvania decides differently." <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 680 (3d Cir. 2002).

Therefore, because Plaintiff has not adequately pleaded misrepresentation as to Defendant's pre-separation statements, and because the gist of the action bars tort liability as to the post-separation statements, Defendant's Motion is granted as to Count III and Count IV.

### C. Defendant's Motion to Dismiss is Denied as to Count V (Palimony)

In Count V, Plaintiff seeks financial compensation based on the termination of her relationship with Defendant on grounds that as Defendant's long-term, cohabitating partner, she is entitled to support. (Am. Compl. ¶¶ 44–49.) Defendant seeks dismissal on the basis that palimony is not a cognizable cause of action in Pennsylvania. (Motion to Dismiss at 13.) Plaintiff responds

that the weight of lower court case law in Pennsylvania supports recognizing palimony as a valid cause of action. (Plaintiff's Opposition at 13.)

"Palimony" is the colloquial term used to refer to the right of one partner to seek financial support from her long-term nonmarital partner based on a clear agreement providing for support. Although the Pennsylvania Supreme Court has never expressly recognized this cause of action, it has long been accepted by lower Pennsylvania courts. See, e.g., Knauer v. Knauer, 470 A.2d 553, 564 (Pa. Super. Ct. 1983) (finding that there is "no public policy in Pennsylvania against entertaining suits between non-married cohabitors in property disputes" and that "the premise of [the palimony] cause of action is consistent with our earlier cases which permitted non-married cohabitors to sue in equity for a partition of property"); Baldassari v. Baldassari, 420 A.2d 556, 559 (Pa. Super. Ct. 1980) (citing favorably Marvin v. Marvin, the revolutionary palimony case); see also De Santo v. Barnsley, 476 A.2d 952, 955 (Pa. Super. Ct. 1984), abrogated on other grounds (noting that Pennsylvania Superior Court followed palimony cases from other states and holding that "agreements between non-married cohabitors fail only to the extent that they involve payment for sexual services").

The Complaint has plausibly alleged facts to support Plaintiff's claim for palimony. Plaintiff's allegations of her longtime cohabitation with Defendant, as well as her allegations related to the agreement between Plaintiff and Defendant that Plaintiff would care for Defendant and maintain his home in exchange for his promise to care for her and her daughter, entitle her palimony claim to survive dismissal. Therefore, Defendant's Motion as to Count V is denied.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint is **GRANTED** in part and **DENIED** in part. The Court **GRANTS** the Motion as to Count III

(Intentional Misrepresentation) and Count IV (Negligent Misrepresentation), and those counts will

be dismissed without prejudice; and **DENIES** the Motion as to Count I, Count II, and Count V.

An appropriate order follows.

O:\CIVIL 19\19-2150 Ohama v Markowitz\19cv2150 Memorandum re Motion to Dismiss.docx